[No. B020535. Second Dist., Div. Six. Mar. 31, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
BLAINE LUCERO, Defendant and Appellant.

**COUNSEL**

Donald W. Beacham, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Gary R. Hahn and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GILBERT, J.**—The police surreptitiously tape recorded a conversation between two criminal suspects after one of them invoked his right to have counsel present during interrogation. The trial court properly admitted the recording because the Sixth Amendment is not violated when neither the police nor police agents deliberately elicit incriminating statements.

### FACTS

Blaine Lucero and Theresa Vankol were arrested by Santa Barbara police on suspicion of auto theft and were taken to the police station for questioning

about this and other possible crimes. They were questioned separately. Lucero at first waived his *Miranda* rights to remain silent and to the assistance of counsel, but after police accused him of robbery he asked to see a lawyer. Interrogation then stopped.

But the police, having gained incriminating information about Lucero from Vankol, wanted to hear more. They placed Lucero and Vankol together in a police car equipped with a hidden tape recorder, and left them alone. The police hoped the two would converse and incriminate themselves on tape. Their hunch paid off. Lucero discussed the details of various crimes, berated Vankol for statements she made to police, and instructed her on cover stories.

The trial court, over objections, admitted into evidence the tape recording and transcript of the police car conversation. Lucero was convicted on a variety of robbery and theft charges. He appeals the conviction on the grounds that admission of the tape recording and transcript violated his Sixth Amendment right to assistance of counsel.

### DISCUSSION

Lucero contends that by placing him in the police car with Vankol after he requested counsel, the police "intentionally created a situation likely to induce" him to make incriminating statements, and that these statements must be excluded. (*United States* v. *Henry* (1980) 447 U.S. 264 [65 L.Ed.2d 115, 100 S.Ct. 2183]; *Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199].)

Lucero relies on *Maine* v. *Moulton* (1985) 474 U.S. 159 [88 L.Ed.2d 481, 106 S.Ct. 477]. The United States Supreme Court upheld the exclusion of incriminating statements made to a codefendant who was secretly a government informant. Lucero argues that *Moulton* requires the police to respect his request for a lawyer and not "to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." (*Moulton, supra,* 474 U.S. at p. 171 [88 L.Ed.2d at p. 493].)

*Massiah* and its progeny prohibit the indirect and surreptitious interrogation of a defendant after the right to counsel has attached. The test for such interrogation is whether the police schemed to "deliberately elicit" incriminating statements from the accused. (*Massiah* v. *United States, supra,* 377 U.S. 201; *United States* v. *Henry, supra,* 447 U S. 264; *Maine* v. *Moulton, supra,* 474 U.S. 159.) In each of these cases the incriminating statements were elicited by a confederate, a police agent or an informant whose true role was

not known to the suspect. (*Henry, supra,* 447 U.S. at pp. 273-274 [65 L.Ed.2d at p. 124]; *Moulton, supra,* 474 U.S. at p. 167 [88 L.Ed.2d at p. 490].)

 Here Vankol was neither an agent nor informant. She was not paid by police (*United States* v. *Henry, supra,* 447 U.S. at p. 270 [65 L.Ed.2d at p. 122]), nor offered leniency for cooperation (*Maine* v. *Moulton, supra,* 474 U.S. at p. 163 [88 L.Ed.2d at p. 487]). She was not a crime victim helping the police (*People* v. *Wojtkowski* (1985) 167 Cal.App.3d. 1077 [213 Cal.Rptr. 846]), nor a witness working for the prosecution (*People* v. *Walker* (1983) 145 Cal.App.3d. 886 [193 Cal.Rptr. 812]), nor a police officer posing as a fellow prisoner (*People* v. *Butts* (1965) 236 Cal.App.2d. 817 [46 Cal.Rptr. 362]). Vankol was merely a catalyst that induced Lucero to talk. *Massiah* does not apply.

In *United States* v. *Hearst* (9th Cir. 1977) 563 F.2d 1331, prison officials secretly recorded a jailhouse conversation between defendant Patty Hearst and a visiting friend. The court upheld the admission of the tape because the friend did not engage Hearst in conversation at the government's direction. The Sixth Amendment is involved only when the interrogation, whether formal or surreptitious, is "by the government." (*Id.,* at p. 1348; see also *People* v. *Moore* (1985) 166 Cal.App.3d. 540, 546 [211 Cal.Rptr. 856].)

Lucero argues that an agency between the police and the third party is not the controlling principle, and that *Massiah* requires exclusion whenever the state intentionally creates or knowingly exploits an opportunity to confront the accused without counsel. (*Maine* v. *Moulton, supra,* 474 U.S. at p. 176 [88 L.Ed.2d at p. 496].) *Moulton* and its predecessors, however, use the word "confrontation" to mean an adversarial meeting between a suspect and the state. (See, e.g., *Moulton, supra,* 474 U.S. at p. 176 [88 L.Ed.2d at p. 496]: ". . . the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused *and a state agent.*" (Italics added.) Here Lucero was "confronted" only by his suspected partner in crime. That the police set up the situation for the purpose of eavesdropping is irrelevant to Sixth Amendment concerns. (*Id.,* at p. 174 [88 L.Ed.2d at p. 495].)

Equally decisive is that Vankol did not ask questions of Lucero or otherwise seek particular, incriminating statements from him. Vankol did not initiate any part of the conversation, but only responded to Lucero's questions and admonitions. Even if she were a police agent, *Massiah* would apply only if the incriminating statements were elicited by the agent, not spontaneously made by the suspect. A passive listening device which collects but does not induce incriminating statements does not violate the Sixth

Amendment. (*United States* v. *Henry, supra,* 447 U.S. at p. 276 [65 L.Ed.2d at p. 126] (conc. opn. of Powell, J.); *People* v. *Talamantez* (1985) 169 Cal.App.3d. 443, 464 [215 Cal.Rptr. 542].)

This view was recently affirmed in *Kuhlman* v. *Wilson* (1986) 477 U.S. 436 [91 L.Ed.2d 364, 106 S. Ct. 2616], where the court explained that the primary concern of the *Massiah* line of cases is "secret interrogation by investigatory techniques that are the equivalent of direct police interrogation. . . . [T]he defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." (*Id.,* at p. __ [91 L.Ed.2d at pp. 384-385].) ▪ There is no Sixth Amendment violation where a police agent does not ask questions but only listens to spontaneous and unsolicited statements. (*Ibid.*)

Lucero argues that the trial court erred in admitting the tape recording because it did not consider the right-to-counsel issue, but instead ruled there was no violation of the constitutional right to privacy. Our review of the record shows, however, that the trial court admitted the evidence because it found neither a Fourth Amendment nor a Sixth Amendment basis for exclusion. Even if the trial court had not considered the Sixth Amendment issue, the result is correct. ▪ Our Supreme Court recently ruled that a criminal suspect in a police car does not have the reasonable expectation of privacy required to invoke constitutional protection. (*People* v. *Crowson* (1983) 33 Cal.3d. 623 [190 Cal.Rptr. 165, 660 P.2d 389].)

Lucero also asserts that the trial court convicted him of stealing the property of Elina Martinez despite the prosecution's failure to present any evidence on this charge. But the count charging him with stealing from Elina Martinez was dismissed by the municipal court after the preliminary hearing.

The judgment is affirmed.

Stone, P. J., and Abbe, J., concurred.